**KHASHAN LAW FIRM, APC**
Lewis Khashan, Esq. (CA SBN: 275906)
Maria Zurmati, Esq. (CA SBN: 334340)
26636 Margarita Road, Suite 101
Murrieta, CA 92563
Telephone: (951) 461-2387
Facsimile: (909) 658-8981
Email:   lewis@khashanlaw.com
Email:   maria@khashanlaw.com

**Attorneys for Plaintiff Frank Lopez**

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA- [DIVISION]

|  |  |
|---|---|
| HELEN LUCERO, Deceased; CECEILIA LOPEZ, Deceased, by and though their Successor-in-Interest and Estate FRANK LOPEZ | Case No.: |
| Plaintiffs, | **PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS** |
| vs. |  |
| OFFICER JOHN DOE 1; OFFICER JOHN DOE 2; CITY OF BALDWIN PARK POLICE DEPARTMENT, CITY OF BALDWIN PARK, and DOES 1- 25, Inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendant(s). |  |

## INTRODUCTION

1.   This action is filed by Frank Lopez (hereinafter "PLAINTIFF"), arising from events that occurred on or about January 10, 2022, when pursuant to PLAINTIFF's 911 call Officer John Doe 1 (hereinafter "OFFICER 1"), and Officer John Doe 2 (hereinafter "OFFICER 2"), the

true names of whom are currently unknown to PLAINTIFF, responded to PLAINTIFF'S

residence, located at 14730 Clark Street Baldwin Park, CA 91706.

2.   PLAINTIFF called 911 regarding his wife, Helen Lucero's (hereinafter, "DECEDENT 1") as she was having a mental health breakdown causing her to exhibit irrational behavior and making serious and dangerous threats to burn down the house which posed a risk of harm to her person and the public in general.

3.   Upon their arrival, PLAINTIFF informed OFFICER 1 and OFFICER 2 that DECEDENT 1 had a lighter, and other objects in her possession that could start a fire and PLAINTIFF was concerned that DECEDENT 1 would use it to burn the house and cause harm to herself, others, or the public at large since a fire could cause damages to surrounding residences and individuals. Further, PLAINTIFF reported to OFFICER 1 and OFFICER 2 that DECEENT 1 had already started putting some items on fire, and requested OFFICER 1 and OFFICER 2 to help her by taking her into custody for mental health treatment and/or evaluation.  PLAINTIFF, DECEDENT 2, and PLAINTIFF's son pleaded with OFFICER 1 and OFFICER 2 to take some action and at least check on her to ensure that she was not going to harm herself, or others in any way.

4.   OFFICER 1 and OFFICER 2 advised PLAINTIFF that they could not take DECEDENT 1 into custody because holding a lighter was not a crime.  OFFICER 1 and OFFICER 2 failed to take reasonable and simple steps to ensure the safety of DECEDENT 1 and that she was not in fact already lighting objects on fire.  Furthermore, despite having knowledge of PLAINTIFF's concerns for DECEDENT 1's wellbeing and the safety of his entire family, OFFICER 1 and OFFICER 2, advised PLAINTIFF and PLAINTIFF's mother, Cecilia Lopez's (hereinafter "DECEDENT2") to leave DECEDENT1 alone, and left the residence without doing

2

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS**

a welfare check on DECEDENT 1; without ensuring that a fire was not already in the making; and without taking any reasonable steps to ensure that no danger was posed by DECEDENT 1 to herself or others.  OFFICER 1 and OFFICER 2 took no reasonable measures whatsoever to ensure the safety of anyone that day.

5.    As a direct result of OFFICER 1 and OFFICER 2's inaction, and failure to at least check on DECEDENT 1 to determine the viability of the alleged threats to burn the house, and to ensure that DECEDENT 1 was not posing a grave danger to herself and others since she was having a mental health breakdown, DECEDENT 1, did in fact use the lighter that she had in her possession and put the house on fire (hereinafter "SUBJECT INCIDENT") causing the avoidable death of DECEDENT 1 and DECEDENT 2, and directly causing the loss of a wife, mother, and grandmother, which could have all been avoided had OFFICER 1 and OFFICER 2 conducted a reasonable welfare check on DECEDENT 1 as they are sworn to do as Police Officers of the State of California, County of Los Angeles.

6.    The SUBJECT INCIDENT caused PLAINTIFF to lose his wife and mother; his childhood home that was filled with wonderful memories; and to sustain 2nd degree burns with lifelong complications and mental anguish as a direct and proximate result of OFFICER 1 and OFFFICER 2's inaction and failure to comply with their own department's policies and procedures.

7.    OFFICER 1 and OFFICER 2 violated PLAINTIFF's rights guaranteed under the Fourteenth Amendment to the United States Constitution as made actionable against Defendants pursuant to 42 U.S.C. §1983, under California Constitution Article §§1 and 7 and under the state tort law, by showing deliberate indifference towards PLAINTIFF's legitimate concerns for safety, deliberate indifference to assist DECEDENT1 to receive the necessary mental health

3

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND**
**VIOLATIONS OF CIVIL RIGHTS**

treatments that she was entitled to; and deliberate indifference to DECEDENT 2's safety and life.  Furthermore, OFFICER 1 and OFFICER 2 violated the City of Baldwin Park Police Department's (hereinafter "POLICE DEPARTMENT") Policies and Procedures requiring them to at the minimum conduct a welfare check on DECEDENT 1 when called out to the residence by a family member indicating that a threat to burn the residence down was likely in progress. More importantly, City of Baldwin Park (hereinafter, "CITY") and POLICE DEPARTMENT failed to properly to train, guide, and supervise its officers in general and OFFICER 1 and OFFICER 2 in particular, causing the violation of PLAINTIFF's rights under the Fourteenth Amendment to the United States Constitution as made actionable against Defendants pursuant to 42 U.S.C. §1983, under California Constitution Article §§1 and 7 and under the state tort law.

## JURISDICTION AND VENUE

8.   This Court has jurisdiction over PLAINTIFF'S federal claims under 28, U.S.C. §§1331, 1343. Under 28 U.S.C. §1367, this Court has supplemental jurisdiction over PALINTIFF's sixth and seventh claims, which are based on state law.

9.   Venue in the United States Central District Court for the Western Division is proper pursuant to 28 U.S.C. §1391(b) because the events giving rise to PLAINTIFF's claim occurred in this district, and DEFENDANTS engaged in their governmental duties in this District. The SUBJECT LOCATION where PLAINTIFF lost his beloved wife and mother to the fire and was fatally injured is or was located at 14730 Clark Street Baldwin Park, CA 91706.

10.  PLAINTIFF commences this action timely and in accordance with the applicable statutes of limitations and the amount of controversy herein, excluding interest and costs, exceeds the minimum jurisdictional limit of this Court.

## PARTIES

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS**

**Plaintiff**

11. PLAINTIFF is the surviving husband of DECEDENT 1, and the surviving son of DECEDENT 2.  PLAINTIFF has a special interest in this matter that is concrete and therefore has standing to bring this claim as Civil Rights Violation under §1983 and for wrongful death survivorship action under the common law of the State of California. Plaintiff was a resident of the State of California, Los Angeles County at the time of the incident; however, since the SUBJECT INCIDENT, PLAINTIFF has been homeless.  Under CCP §377.30, a cause of action that survives the death of the person entitled to commence an action or proceeding passes to the Decedent's Successor-in-Interest.  Pursuant to CCP §377.34(b), effective January 1, 2022, in an action by a Decedent's Successor-in-Interest on the Decedent's cause of action, the damages recoverable may include damages for pre-death pain, suffering, and disfigurement since this action is being filed after January 1, 2022, and before January 1, 2026.

**Defendants:**

12. DEFENDANT OFFICER 1, whose name is unknown to PLAINTIFF, at all times herein relevant, was employed by, and working on behalf of the POLICE DEPARTMENT and resided within the State of California. He was a Baldwin Park City police Officer who actively participated in responding to PLAINTIFF's 911 call on the aforesaid date and acted under the color of law within the scope of his agency with the CITY. PLAINTIFF will hereafter seek leave of the Court to amend this Complaint to include OFFICER 1's true name and capacity after the same have been ascertained.

13. DEFENDANT OFFICER 2, whose name is unknown to PLAINTIFF, at all times herein relevant, was employed by, and working on behalf of the POLICE DEPARTMENT and resided within the State of California. He was a Baldwin Park City police Officer who actively

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS**

participated in responding to PLAINTIFF's 911 call on the aforesaid date and acted under the color of law within the scope of his agency with the CITY. PLAINTIFF will hereafter seek leave of the Court to amend this Complaint to include OFFICER 1's true name and capacity after the same have been ascertained.

14. DEFENDANT CITY is, and at all times herein alleged was a city within Los Angeles County in the State of California with its town hall located at 14403 Pacific Ave., Baldwin Park, CA 91706.

15. DEFENDANT POLICE DEPARTMENT is, and at all times herein alleged was a municipal corporation or political subdivision organized and existing under the laws if the State of California. POLICE DEPARTMENT is, and at all times herein alleged was an agency of the CITY. A governmental claim was filed within the code and sufficient time has lapsed and/or the claim was rejected therefore allowing for the filing of this complaint.

**Other Defendants**

16. The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of DOES 1-25, inclusive, are unknown to PLAINTIFF who therefore sued said DEFENDANTS by such fictitious names. The full extent of the facts linking such fictitiously sued DEFENDANTS is unknown to PLAINTIFF.  PLAINTIFF is informed and believes, and thereupon alleges, that each of the DEFENDANTS designated herein as a DOE was, and is negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to PLAINTIFF. PLAINTIFF will hereafter seek leave of the Court to amend this Complaint to show the DEFENDANTS' true names and capacities after the same have been ascertained.

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS**

**Agency & Concert of Action**

17.   At all times herein mentioned, DEFENDANTS, and each of them, hereinabove, were the agents, servants, employees, partners, aiders and abettors, and/or joint venturers of each of the other DEFENDANTS named herein and were at all times operating and acting within the scope and purpose of said agency, service, employment, partnership, enterprise, and/or joint venture, and each DEFENDANT has ratified and approved the acts of each of the remaining DEFENDANTS.

## GENERAL ALLEGATIONS

18. PLAINTIFF is informed and believes, and thereon alleges, that at all times herein mentioned, each DEFENDANT was an agent and/or employee and/or co-conspirator or each remaining DEFENDANT, and in engaging in acts and/or omissions hereinafter alleged, was acting within the scope of such agency, employment, and/or conspiracy, and with the permission and consent of other CO- DEFENDANT.

19.   The acts and omissions of all DEFENDANT were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of PLAINTIFF.

## STATEMENT OF FACTS

20.   PLAINTIFF realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

21.   On or about January 10, 2022, DECEDENT 1 was having a mental breakdown, due to which she locked herself in a room with a lighter in her hand and was threatening PLAINTIFF and everyone in the house that she was going to burn the house down while she was in the house.

7
**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS**

22. DECEDENT 1 had started burning some small items which was of an enough concern to PLAINTIFF, DECEDENT 2 and PLAINTIFF and DECEDENT 1's son (hereinafter "SON") to call 911 dispatcher to report their concern and to seek assistance from CITY and POLICE DEPARTMENT because they are supposedly trained to handle such mental health crisis and have taken an oath to uphold the United States Constitution, to support the laws of their states, their agencies, and to ensure the safety of the people in the communities they serve.

23. On several occasions, prior to the SUBJECT INCIDENT, PLAINTIFF had to call 911 to report mental health breakdowns by DECEDENT 1 where assistance was required as a result of her actions.

24. On prior occasions, upon responding to PLAINTIFF's residence pursuant to the forementioned calls, the responding officers took proper measures to ensure safety of DECEDENT 1, and everyone else in the house, by taking DECEDENT 1 to a mental health facility to assist her in receiving proper mental health treatments and to prevent her from causing any harm to herself and/or others.

25. Baldwin Park Police Department had prior knowledge of DECEDENT 1's condition and her propensities to cause harm since they had dealt with her on multiple occasions in the past prior to the SUBJECT INCIDENT.

26. Approximately, forty-five (45) minutes later, after the aforesaid 911 call on January 10, 2022, OFFICER 1 and OFFICER 2 responded to PLAINTIFF's residence to inquire about PLAINTIFF's concern.

27. PLAINTIFF explained to OFFICER 1 and OFFICER 2 that he was concerned about DECEDENT 1's condition and the threats she was making because she had a lighter in her

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS**

possession and had locked herself up in a room and refused to come out so that they could speak with her and calm her down.

28. PLAINTIFF informed OFFICER 1 and OFFICER 2 that DECEDENT 1 was already putting some small items on fire and he had a genuine concern about her burning the house or herself. Further, PLAINTIFF told OFFICER 1 and OFFICER 2 about DECEDENT 1's refusal to come out of the room and threatening to harm herself.

29. OFFICER 1 and OFFICER 2 advised PLAINTIFF that they could not do anything about her having a lighter in her possession because it was not a crime. However, OFFICER 1 and OFFICER 2 completely ignored the issue of DECEDENT 1 already burning small items, locking herself in a room, and threatening to harm herself which could lead to DECEDENT 1 causing significant harm to herself and/or others which was the exact result of what happened here.

30. After spending approximately forty-five (45) minutes with PLAINTIFF on the front porch of his residence, OFFICER 1 and OFFICER 2 advised PLAINTIFF to go into the house, and to leave DECEDENT 1 alone and let her calm down on her own, and they left the premises without taking any reasonable measures whatsoever to ensure that DECEDENT 1 was not starting a fire; causing harm to herself; and was not a danger to herself or others, regardless of the threats already being made by her.

31. OFFICER 1 and OFFICER 2 did not check on DECEDENT 1 to ensure she was safe; they failed to summon the mental health crisis unit to respond to the residence and examine DECEDENT1's mental state to rule out the possibility of worsening of her condition and thereby causing any kind of harm to herself and/or others.

9

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS**

32. Pursuant to POLICE DEAPRTMENT's Policies and Procedures, OFFICER 1 and OFFICER 2, as responding officers to a mental health crisis call, were required to promptly assess the situation independent of any information shared with them by PLAINTIFF to determine whether a mental health crisis was a factor; to take DECEDENT 1's mental health history and prior 911 calls into account that whatever DECEDENT 1 was doing, she was unable to appreciate the consequences of her actions; to take steps to preserve everyone's safety; evaluate available information such as the information received from PLAINTIFF and information already in POLICE DEPARTMENT's possession due to prior 911 calls for similar mental health breakdowns by DECEDENT 1; and take DECEDENT 1 into a 72-hour custody to receive proper mental health treatment.

33. OFFICER 1 and OFFICER 2 violated the POLICE DEPARTMENT'S Policy and Procedures by completely ignoring the reasonably available information about DECEDENT 1's history of mental health breakdowns in addition to the threats she was making on this particular occasion and the fact that her having a lighter in her possession, setting small items on fire, combined with her mental health breakdown, should have been reasonably foreseeable to the responding officers that DECEDENT 1 was a threat to herself and others. Any reasonably prudent person in OFFICER 1's and OFFICER 2's shoes would not have ignored the information provided to them upon arrival, nor failed to at the minimum conduct a welfare check on DECEDENT 1 to see if any of the claims made by PLAINTIFF were in fact real. They had ample time to conduct the welfare check and failed to do so.

34. After OFFICER 1 and OFFICER 2 left the premises, PLAINTIFF went to get ready for bed and left DECEDENT 1 alone as he was instructed to by OFFICER 1 and OFFICER 2.

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS**

When he was in his room getting ready for bed, he heard his SON shouting, telling his mother, DECEDENT 1 to stop it. PLAINTIFF came out of his room to check and saw the fire.

35. DECEDENT 1 was in the room where she had locked herself up.  PLAINTIFF, his SON, and DECEDENT 2, ran out of the house and called the fire department to report the fire. PLAINTIFF was told that due to the number of calls they had received, the nearest fire department had to summon the neighboring city's and/or community's fire department to come to PLAINTIFF's aid.  PLAINTIFF was also informed that it would take some time until the help arrives.

36.  While waiting for the firefighters to arrive, DECEDENT 2 went back into the house to get some of her valuable items, and PLAINTIFF also ran back into the house to help DECEDENT 1 and to take her out of the house.  However, his attempt to save his wife's life was not successful because she had died in the fire.  In his attempt to save his wife's life, PLAINTIFF sustained 2nd degree burns to his person causing him severe pain, suffering, and injury of which he continues to suffer from today.  PLAINTIFF's mother, DECEDENT 2 also did not make it alive from the house and was burned to death.

37. PLAINTIFF was taken out of the house engulfed in raging flames and rushed to the hospital with severe burns.  PLAINTIFF was placed in an induced comma to get proper treatment for his burns for approximately eighteen (18) days. When PLAINTIFF woke up from the comma, he received the devastating news about his beloved wife's and mother's passing as a result of the SUBJECT INCIDENT.

38.  PLAINTIFF is informed and believes that POLICE DEPARTMENT failed to properly train its Officers, including OFFICER 1 and OFFICER 2 in dealing and/or responding to 911 calls pertaining to mental health crisis even though the POLICE DEPARTMENT's policy and

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS**

procedure manual clearly indicates what responding officers are required to do when responding to claims of mental health issues.

39.  PLAINTIFF is informed and believes that the POLICE DEPARTMENT does have several guidelines in place requiring the 911 call dispatchers and the responding Officers to seek assistance of the mental health crisis team and/or other mental health professionals when responding to 911 calls related to mentally ill individuals to protect the law enforcement Officers, the mentally ill individuals, and the public at large.

40.  The POLICE DEPARMENT failed to properly retain, train, and supervise officers to handle mental health related 911 calls, as occurred here, which resulted in the unfortunate and avoidable death of DECEDENT 1 and DECEDENT 2.  The POLICE DEPARTMENT failed to ensure that its officers followed the policy and procedures manual, mental health training, crisis training, and/or other educational materials provided to the officers, related to dealing with individuals suffering from a mental illness and as such, caused the avoidable death of DECEDENT 1 and DECEDENT 2.

## **DAMAGES**

41.  As a direct result of DEFENDANTS', including OFFICER 1's, OFFICER 2's and DOES's 1-25 acts/omissions as herein before described, PLAINTIFF suffered the loss of his wife and mother; 2nd degree burns for which he was placed on an artificially induced comma so that he could receive the proper medical, treatment and he may continue to require medical care in the future; loss of his childhood home along with all of his childhood memories that cannot never be replaced; and the aforesaid acts and/or omission caused PLAINTIFF to become homeless and exposing him to risks of harm associated with living on the street or under a freeway underpass; PLAINTIFF also incurred medical costs, and may incur future medical costs

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS**

for the treatments; PLAINTIFF has experienced pain and suffering both in the past and will likely suffer in the future; PLAINTIFF suffered emotional distress, embarrassment, disfigurement, embarrassment, mental and physical pain, pain and suffering, humiliation, and other damages of which he will continue to suffer in the future.

42. PLAINTIFF claims damages for DECEDENT 1 and DECEDENT 2's 's pre-death pain and suffering because DECEDENTs experienced severe pain, suffering, and discomfort in the hours after they sustained burns and before they passed away as a direct and proximate cause of the SUBJECT INCIDENT.  Further, PLAINTIFF sustained damages resulting from the loss of aid, affection, comfort, society, and companionship, as well as other benefits and assistance from DECEDENT 1 and DECEDENT 2 as a result of DEFENDANTS' deliberate indifference to life, safety, and medical needs.

43. As a direct result of DEFENDANTS' conduct herein before described, PLAINTIFF suffered violation of his rights under the Fourteenth Amendment to the United States Constitution as made actionable against Defendants pursuant to 42 U.S.C. §1983, under California Constitution Article §§1 and 7 and under the state tort law, by DEFENDANTS' deliberate indifference towards PLAINTIFF's legitimate concerns for safety, deliberate indifference to assist DECEDENT 1 to receive the necessary mental health treatments that she was entitled to; and deliberate indifference to DECEDENT 2's safety and life.

44. Therefore, PLAINTIFF is entitled to an award of all attorney's costs, fees and litigation costs incurred in pursuing this action for violation of his Civil Rights and CA state law tort of negligence, wrongful death, and intentional infliction of emotional distress.

## **CLAIMS FOR RELIEF**

### **First Claim For Relief**

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS**

**Violation of Civil Rights- 42 U.S.C. §1983- Fourteenth Amendment**
**Deliberate Indifference to Serious Medical Need**
**Against all DEFENDANTS**

45. PLAINTIFF realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

46. On or about January 10, 2022, OFFICER 1 and OFFICER 2 responded to PLAINTIFF's residence pursuant to a 911 call related to a mental health breakdown by DECEDENT 1.

47. After OFFICER 1 and OFFICER 2 arrived at the aforesaid residence, PLAINTIFF informed them about DECEDENT 1's condition, her threats to burn the house down, harm herself, and her having a lighter in her possession which she had already used to put items on fire.

48. OFFICER 1, OFFICER 2, and DOES 1-25 were aware of DECEDENT 1's mental health condition and understood the necessity and urgency of the mental health treatment or evaluation for DECEDENT 1; however, the OFFICER 1, OFFICER 2, and DOES 1-25 ignored PLAINTIFF's request to assist DECEDENT 1 in getting the help that she needed and thereby they ignored the likelihood of DECEDENT 1 causing harm to herself and others in the house. DECEDENT 1 had a constitutional right under the Fourteenth Amendment to receive prompt medical and/or mental health care. OFFICER 1, OFFICER 2 and DOES 1-25 violated DECEDENT 1's constitutional right to mental health care when they acted with deliberate indifference to DECEDENT's serious mental health needs.

49. At all times, OFFICER 1, OFFICER 2, and DOES 1-25 were acting under the color of law and were acting in the course and scope of their employment with CITY and POLICE DEPARTMENT.

14

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND**
**VIOLATIONS OF CIVIL RIGHTS**

50. At all times, OFFICER 1, OFFICER 2, and DOES 1-25, knew or should have known that DECEDENT 1 was having a mental health breakdown which was a factor for her to not appreciate and/or understand the consequences of her conduct.

51. OFFICER 1, OFFICER 2, and DOES 1-25, failed to properly evaluate or investigate PLAINTIFF'S claim about DECEDENT 1's mental health breakdown and his concern about his own and his family's safety; they failed to take DECEDENT 1's mental health history and history of the POLICE DEPARTMENT responding to previous 911 calls related to DECEDENT 1 into consideration; and failed to assist and/or offer DECEDENT 1 to receive proper mental health treatment for her serious mental health needs.

52. As a direct and proximate result of OFFICER 1's, OFFICER 2's and DOES's 1-25 acts and omissions that were deliberately indifferent DECEDENT 1's serious medical and/or mental health needs, DECEDENT 1 lost her life to the fire in the residence.

53. OFFICER 1, OFFICER 2 and DOES 1-25 acted with deliberate or reckless disregard to DECEDENT 1's constitutionally protected rights, justifying an award of punitive or exemplary damages against OFFICER 1, OFFICER 2 and DOES 1-25 in an amount subject to proof at the time of trial in order to deter OFFICER 1, OFFICER 2 and DOES 1-25 from engaging in similar conduct in the future and to make an example by way of monetary punishment. Further PLAINTIFF as a Successor-in-interest to DECEDENT 1 is also entitled to attorneys fees and costs associated with this complaint.

**Second Claim For Relief**
**Violation of Civil Rights- 42 U.S.C. §1983- Fourteenth Amendment**
**Right to Familial Relationship**
**Against all DEFENDANTS**

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS**

54.    PLAINTIFF realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

55. OFFICER 1, OFFICER 2 and DOES 1-25, knew that PLAINTIFF had legitimate concerns about his own and his family's safety because DECEDENT 1 was suffering a mental health breakdown which made it somewhat impossible for him to help his suicidal wife in persuading her to come out of the room in which she had locked herself up and/or to give him the lighter she had in her possession.

56. OFFICER 1, OFFICER 2 and DOES 1-25, knew that when responding to a 911 call pertaining to a mental health crisis or breakdown, they were required to evaluate and investigate the situation, evaluate available information pertaining to the individual's mental health history and prior mental health breakdowns, evaluate safety conditions and ensure the participants' safety; however, they failed to fulfill any of the above stated requirements. Nonetheless, they instructed PLAINTIFF to just leave DECEDENT 1 alone and return to their home.

57. OFFICER 1, OFFICER 2 and DOES 1-25's, failures to fulfill the requirements of the POLICE DEPARTMENT'S Policy and Procedure and their failure to at least check on DECEDENT 1 to ensure she was not a danger to herself, and others amounts to a deliberate indifference to PLAINTIFF's constitutional right to familial relationship.

58. As a direct and proximate result of OFFICER 1's, OFFICER 2's and DOES's 1-25 acts and omissions that were deliberately indifferent to PLAINTIFF's right to familial relationship, PLAINTIFF lost his wife and mother.

59. OFFICER 1, OFFICER 2 and DOES 1-25 acted with deliberate or reckless disregard to PLAINTIFF'S constitutionally protected rights, justifying an award of punitive or exemplary damages against OFFICER 1, OFFICER 2 and DOES 1-25 in an amount subject to proof at the

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS**

time of trial in order to deter OFFICER 1, OFFICER 2 and DOES 1-25 from engaging in similar conduct in the future and to make an example by way of monetary punishment. Further PLAINTIFF as a Successor-in-interest to DECEDENT 1 is also entitled to attorney's fees and costs related to the filing and litigation of this complaint.

**Third Claim For Relief**
**Violation of Civil Rights- 42 U.S.C. § 1983; Art. 1, §§1 and 7, California Constitution**
**Right to Safety and Life**
**Against all DEFENDANTS**

60. PLAINTIFF realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein.

61. DEFENDANTS OFFICER 1, OFFICER 2, POLICE DEPARTMENT, CITY, and DOES 1-25 violated DECEDENT 1's and DECEDENT 2's rights to life and safety protected under California Constitution Article 1 §1 and §7 by failing to take proper measure to ensure the DECEDENT 1 and DECEDENT 2's safety and that they were free from a potential life-threatening harm which could result due to DECEDENT 1's mental breakdown.

62. OFFICER 1, OFFICER 2, POLICE DEPARTMENT, CITY, and DOES 1-25 wrongful acts and/or omission were intentional in failing to protect and preserve DECEDENTS' lives, PLAINTIFF's safety and securing property, and that at minimum, DEFENDANTS, and each of them were deliberately indifferent to the likely consequences of DECEDENT 1's mental health crisis.

63. As a direct and proximate consequence of DEFENDANTS' unlawful conduct, DECEDENT 1 and DECEDENT 2 lost their lives; PLAINTIFF lost his beloved wife and mother; lost his childhood home; sustained 2nd degree burns with lifelong consequences and became homeless.

17
**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS**

64. DEFENDANTS' failure to act and/or conduct alleged herein amounts to oppression, fraud or malice within the meaning of Civil Code §3294 and was performed knowingly, intentionally and maliciously, amounting to despicable conduct by reason of which PLAINTIFF is entitled to an award of exemplary damages against these DEFENDANTS in an amount subject to proof at the time of trial in order to deter these DEFENDANTS from engaging in similar conducts and to make an example by the way of monetary punishment. PLAINTIFF is entitled to attorney's fees and costs of suit herein pursuant to statute.

**Fourth Claim For Relief**
**Failure to Properly Train and Supervise & Monell Liability for Unconstitutional Policy, Practice & Custom- 42 U.S.C. § 1983**
**Against POLICE DEPARTMENT, CITY, AND DOES 1-25.**

65.   PLAINTIFF realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein

66.   PLAINTIFF is informed and believes, and thereon alleges, that CITY's officers in general and OFFICER 1 and OFFICER 2 in particular, when responding a call pertaining to mental health crises, are required to promptly assess the situation independent of the information shared with them regarding that situation; to assess whether a mental health crisis is a factor; to take into account the mentally ill individual's mental and emotional state and potential inability to appreciate the consequences of her action; employ strategies to preserve the safety of all participants and to evaluate any available information that could assist them in determining the cause of motivation for the mentally ill individual's actions or intentions, all of which is located within the POLICE DEPARTMENT's Policy and Procedures manual.

67.   After OFFICER 1, OFFICER 2 and DOES 1-25 arrived at PLAINTIFF's residence on January 10, 2022, PLAINTIFF clearly informed OFFICER 1, OFFICER 2 and DOES 1-25 that DECEDENT 1 was suffering from a mental disorder which was the factor for her to

18
**PLAINTIFF'S COMPLAINT FOR DAMAGES AND**
**VIOLATIONS OF CIVIL RIGHTS**

experience a mental health breakdown, rendering her incapable to appreciate the consequences of her actions. This information was sufficient for OFFICER 1, OFFICER 2 and DOES 1-25 to act in accordance with the aforesaid requirements of the POLICE DEPARTMENT. The information that PLAINTIFF shared with OFFICER 1, OFFICER 2 and DOES 1-25 does not warrant any kind of reluctance or indifference and was clear enough to make OFFICER 1, OFFICER 2 and DOES 1-25 to at least initiate contact with DECEDENT 1 or to evaluate the situation. However, OFFICER 1, OFFICER 2 and DOES 1-25 failed to follow the required procedures of the POLICE DEPARTMENT to preserve DECEDENT 1's, PLAINTIFF's, SON's, and DECEDENT 2's safety.

68. POLICE DEPARTMENT's lack of a proper hiring, training, and retention, of police officers who respond to mental health crisis or breakdown was a direct and proximate cause of PLAINTIFF's injuries and the loss of life of DECEDENT 1 and DECEDENT 2.  OFFICER 1 and OFFICER 2 could have made contact with the Mobile Crisis Response Unit or other professionals, better trained to deal with individuals who are experiencing mental health crisis, and their failure to do so is a departure from the standards and practices of the Baldwin Park Police Department, Police Departments in California in general, and more importantly in Los Angeles County in particular, which clearly amounts to deliberate indifference to DECENDENTS' well-being and safety.

69. CITY's and POLICE DEPARTMENT's failure to maintain adequate and proper training for its law enforcement officers in the department necessary to educate them as to the constitutional rights of citizens in general and mentally challenged individuals in particular; to ensure their safety and well-being amounts to deliberate indifference.

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS**

70. CITY and POLICE DEPARTMENT were aware, or should have been aware, of the propensities of its officers in general and OFFICER 1 and OFFICER 2 in particular to abuse their discretion when dealing with individuals who are experiencing mental health breakdowns and showing reluctance toward their safety and wellbeing; however, CITY and POLICE DEPARTMENT failed to adequately train and supervise its officers from violating the afore-mentioned individuals' rights.

71. OFFICER 1's, OFFICER 2's, and DOES' 1-25 deliberate indifference to PLAINTIFF's constitutional rights shows that CITY, POLICE DEPARTMENT and DOES 1-25 failed to provide adequate training and supervision to police officers that hold the power, authority, insignia, equipment and resources available to them to protect citizens in situation such as the one in question. This failure amounts to deliberate indifference to citizen's constitutional rights.

72. Therefore, CITY's OFFICER 1, OFFICER 2 and DOES 1-25, acted with deliberate indifference to the rights of PLAINTIFF, DECEDENT 1 and DECEDENT 2; disregarded a duty to protect DECEDENT 1, PLAINTIFF, DECEDENT 2, and SON from the fatalities caused by DECEDENT1.

73. POLICE DEPARTMENT's inadequate policy and procedures and failure to equip its officers, including OFFICER 1 and OFFICER 2 with proper training related to responding to mental health crisis calls, was the direct and proximate cause of the death of PLAINTIFF's wife and mother, resulted in loss of PLAINTIFF's childhood home, and caused physical injuries to PLAINTIFF.

74. CITY's and POLICE DEPARTMENT's failure to adequately train its officers amounts to deliberate indifference to PLAINTIFF's constitutional right to safety and well-being

20

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND**
**VIOLATIONS OF CIVIL RIGHTS**

which could have been prevented had POLICE DEPARTMENT ensured that all officers,

especially OFFICER 1 and OFFICER 2 followed the department's policy.

**Fifth Claim For Relief**
**Violation of DECEDENT1's Rights Protected under ADA**
**Against CITY, DOES 1-25.**

75.  PALINTIFF realleges and incorporates the allegations set forth in the preceding

paragraphs as though fully set forth herein

76. Under Title II of the Americans With Disabilities Act, ("ADA") 42 U.S.C. §12132, et

seq., and section 504 of the Rehabilitation Act, 29 U.S.C. § 701, et seq., DECEDENT 1 was a

qualified individual with a disability.

77. CITY and DOES 1-25, through its employees and agents knew that DECEDENT 1

was disabled who required mental health assistance to prevent her from causing harm to herself

and/or others around her.

78. At all times, CITY, POLICE DEPARTMENT, OFFICER 1, OFFICER 2, and DOES

1-25 knew or should have known the DECEDENT 1 suffered from a mental health illness

causing her to have mental health breakdowns and posing risk of harm or death to herself and/or

others around her since PLAINTIFF had reported mental health breakdowns by DECEDENT 1

on multiple occasion prior to the SUBJECT INCIDENT.

79. CITY and its officers failed to reasonably accommodate DECEDENT 1's disability:

by failing to check on her to assess her condition and/or the situation; by failing to summon

mental health crisis unit or other experienced professionals to evaluate DECEDENT 1 and

ensure her and other individuals' safety; by failing to reasonably accommodate DECEDENT 1's

needs for mental health evaluation and treatment causing her condition to deteriorate which

resulted in her own and her mother-in-law's death, destruction of their home, and physical injuries to PLAINTIFF.

80. Pursuant to 42 U.S.C. § 12132, "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity."

81. Title II of the Americans with Disability Act creates an affirmative duty in some circumstances to provide special, preferred treatment, or "reasonable accommodation."

82. Further, facially neutral policies may violate the ADA when such policies unduly burden disabled person, even when such policies are consistently enforced.

83. Discrimination under ADA includes a defendant's failure to make reasonable accommodations to the needs of a disabled person based on her mental or physical health. These accommodations include specialized training on handling mental health crisis 911 calls by the dispatcher and response to those calls by officers.

84. "A plaintiff need not allege either disparate treatment or disparate impact in order to state a reasonable accommodation claim." *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004). "In the context of disability, therefore equal treatment may not beget equality, and facially neutral policies, and facially neutral policies may be, in fact, discriminatory if their effect is to keep persons with disability from enjoying the benefits of services that by law, must be available to them." *Presta v. Peninsula Corridor Joint Powers Bd.,* 16 F. Supp. 2d 1134, 1136 (N.D. Cal. 1998) (internal citation omitted).

85. In order to stay safe and alive, DECEDENT 1 required mental health accommodations, such as mental health crisis unit to be summoned to their residence to provide

22

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS**

the necessary mental health evaluation. However, CITY, its officers and DOES 1-25, failed to provide reasonable and required accommodations to DECENDENT 1 to prevent her from causing the SUBJECT INCIDENT.

86. CITY and its officers denied DECEDENT 1 the benefits and services of government programs, services, or activities. As public entities that receive federal financial assistance, CITY is vicariously liable for its officers' violation of Title II of the American With Disability Act and Section 504 of the Rehabilitation Act.

87. When PLAINTIFF informed OFFICER 1 and OFFICER 2 that his wife, DECEDENT 1 was experiencing a mental health crisis and was in need of assistance, instead of calling mental health crisis unit or taking DECEDENT 1 into custody for mental health evaluation as any well trained, officer would have done, OFFICER 1 and OFFICER 2 completely ignored PLAINTIFF's request and instead advised PLAINTIFF to leave DECEDENT alone.

88. By ignoring PLAINTIFF's request for assistance; DECEDENT 1's need for mental health treatment and by advising PLAINTIFF to leave DECEDENT 1 alone, OFFICER 1, OFFICER 2 and DOES 1-25 denied DECEDENT 1 the needed mental health services when PLAINTIFF specifically informed officers about DECEDENT 1's disability. Further, there was no effort to "level the playing field" by check on DECEDENT 1 and providing her medical or mental health evaluation based on her disability.

89. This demonstrates that CITY and its officers were discriminating against DECEDENT 1 because of her disability. Further, CITY and its officers violated DECEDENT 1's clearly established right under the ADA with deliberate indifference.

90. The violation of DECEDENT 1's rights resulted from CITY's police department's policies and procedures adopted or maintained with deliberate indifference.

23

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS**

91. As a result of the foregoing conduct, DECEDENT 1's rights under Title II of the American with Disabilities Act and Section 504 of Rehabilitation Act were violated and she was discriminated against because of her disability.

92. As a direct and proximate cause of the CITY's and its officers' conduct as herein described DECEDENT 1 lost her life.

93. As a direct and proximate cause of the CITY's and its officers' conduct, DECEDENT 1 suffered physical and mental pain and suffering before her death.

**Sixth Claim For Relief**
**Wrongful Death and Survival Action Under State Tort Law**
**Against all DEFENDANTS**

94. PALINTIFF realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein

95. DEFENDANTS, and DOES 1-25, and each of them, owed a duty of care to DECEDENT 1, DECEDENT 2, PLAINTIFF and SON, whom they interacted with pursuant to a 911 call, to act with ordinary care and prudence to ensure their safety and wellbeing. In particular, DEFENDANTS owed a duty of reasonable care to check on DECEDENT 1 to make sure she did not pose a threat of harm to herself and/or others to avoid a fatality that could easily occur considering DECEDENT 1's mental condition.

96. Further, PLAINTIFF alleges that DEFENDANTS had a duty pursuant to POLICE DEPARTMENT's policy and procedures when responding to a mental health related 911 call, to promptly assess the situation independent of reported information by initiating contact with the mentally ill individual and/or otherwise assessing the crises; preserve safety of all participants; evaluate available information to determine the cause for such a mental breakdown; evaluate safety conditions, inquire about prior incidents involving same or similar threats or incidents; and

24
**PLAINTIFF'S COMPLAINT FOR DAMAGES AND**
**VIOLATIONS OF CIVIL RIGHTS**

whether police officers have responded to those incidents; and to take an individual who is showing a mental breakdown and that person is a danger to herself or others into a custody and place her in an approved mental health facility for 72-hour treatment and evaluation if there is reasonably available information about the historical course of that particular individual's mental disorder, which may include evidence shared to the officers by a professional who has provided mental health treatment to that individual, and/ or a family member.

97. At all times mentioned herein, OFFICER 1, OFFICER 2 and DOES 1-25 were acting in the course and within the scope of their employment with CITY. DEFENDANTS, and each of them breached their duty of care to DECEDENT 1, DECEDENT 2, PLAINTIFF and SON by:

(a) failing to promptly assess the situation independent of reported information by PLAINTIFF;

(b) failing to check on DECEDENT 1 and/or initiating contact with her individual and/or otherwise assessing the crises;

(c) failing to preserve safety of DECEDNT 1, DECEDENT 2, PLAINTIFF and SON;

(d) failing to evaluate available information to determine the cause for such a mental breakdown;

(e) failing to evaluate safety conditions;

(f) failing to inquire about prior incidents involving DECEDENT 1; and

(g) failing to take DECEDENT 1 who was a danger to herself and her family members, including PLAINTIFF into custody and to place her in an approved mental health facility for 72-hour treatment and evaluation despite having information about the historical course of DECEDENT 1's mental disorder shared by her husband, PLAINTIFF.

25
**PLAINTIFF'S COMPLAINT FOR DAMAGES AND VIOLATIONS OF CIVIL RIGHTS**

98. By engaging in the foregoing acts and/or omissions, DEFENDANTS, and each of them, breached their duty of care owed to DECEDENT 1, DECEDENT 2, PLAINTIFF son. Further, CITY is responsible for the acts of its individual agents and employees under the theory of *respondeat superior*.

99. As a direct and proximate result of DEFENDANT's negligent conduct alleged herein, PLAINTIFF lost his wife, his mother, lost his childhood home, suffered 2nd degree burns with lifelong complications, and severe emotional distress. Further, PLAINTIFF sustained damages resulting from the loss of aid, affection, comfort, society, and companionship, as well as other benefits and assistance from DECEDENTs 1 and 2 as a result of DEFENDANTS' negligence.

100. Further, the conduct and/or omission of OFFICER 1 and OFFICER 2 amounts to oppression, fraud, or malice within the meaning of Civil Code Section 3294 et seq., and punitive damages should be assessed against each DEFENDANT for the purposes of punishment and for the sake of example.

**Seventh Claim For Relief**
**Intentional Infliction of Emotional Distress Under State Tort Law**
**Against all DEFENDANTS**

101. PALINTIFF realleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth herein

102. As set forth above, the actions and/or omissions of DEFENDANTS, and of OFFICER 1 and OFFICER 2 in particular were extreme and outrageous and demonstrated DEFENDANTS', including OFFICER 1's and OFFICER 2' s complete disregard for PLAINTIFF's, DECEDENT 1's, DECEDENT 2's and SON's health, safety, and well-being.

103. DEFENDANTS' actions were the direct and proximate cause of the

26
**PLAINTIFF'S COMPLAINT FOR DAMAGES AND**
**VIOLATIONS OF CIVIL RIGHTS**

DECEDENTS 1's and 2's deaths and injuries inflicted upon PLAINTIFF as a result of the SUBJECT INCIDENT.

104.  DEFENDANTS' failure to check DECEDENT 1 to make sure she was not a threat to cause harm to herself and to her family members, their failure to summon the mental health crisis unit and/or take DECEDENT 1 into custody to receive a 72- hour mental health treatment and evaluation resulted in DECEDENT 1's and DECEDENT 2's death and thereby causing severe emotional distress to PLAINTIFF, and/or acted in conscious disregard of the probability that PLAINTIFF would suffer severe emotional distress. DEFENDANTS' conduct was so extreme as to go beyond the bounds of decency and be regarded as intolerable in a civilized society.

105. As a direct and legal result of the wrongful conduct and/or omissions of DEFENDANTS and each of them, PLAINTIFF suffered, and continue to suffer, the injuries and damages hereinabove set forth.

106.  In doing the wrongful and intentional act as herein alleged, DEFENDANTS acted willfully, recklessly, and with oppression, fraud, malice and with a conscious disregard for the DECEDENTS' lives and for PLAINTIFF's health, safety and general welfare. Such action was done with malice, oppression, and/or fraud and was and is despicable, shocking, and offensive and entitles PLAINTIFF to an award of punitive damages against DEFENDANTS in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays judgment against DEFENDANTS as follows:

  a. General damages, including emotional distress, according to proof at the time of trial;

**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS**

b.   Special damages according to proof at the time of trial;

c.   Prejudgment interest;

d.   Punitive Damages, at the time of trial;

e.   Costs of suit incurred herein; and

f.   Attorneys' fees;

g.   Exemplary damages.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands that the present matter be set for a jury trial.

//

//

//

*Respectfully Submitted by:*

**THE KHASHAN LAW FIRM, APC**
A Professional Law Corporation

Dated:                          By: *Lewis Khashan, Esq.*
                                    Maria Zurmati, Esq.
                                    Lewis G. Khashan, Esq.
                                    Attorneys for Frank Lopez

28
**PLAINTIFF'S COMPLAINT FOR DAMAGES AND
VIOLATIONS OF CIVIL RIGHTS**